UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY GRAYER and RHONDA
GRAYER,

        Plaintiffs,

v.

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, and FEDERAL HOME
LOAN MORTGAGE CORPORATION,

        Defendants.
_____/

Case No. 12-11125

Hon. Patrick J. Duggan

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiffs Jeffrey and Rhonda Grayer commenced this action against Defendants JPMorgan Chase Bank ("JPMorgan") and Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, "Defendants") in state court seeking to redress alleged improprieties in the foreclosure of their home. After removing the action to this Court, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is presently before the Court. Having determined that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons stated herein, the Court grants Defendants' Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 2, 2007, Plaintiffs Jeffrey and Rhonda Grayer accepted a $219,802 loan from Washington Mutual Bank, FA ("WaMu"), and, in exchange, executed a promissory note secured by a mortgage on real property commonly known as 4243 Redding Court, Grand Blanc, Michigan (the "Property"). (Am. Compl. ¶ 8; Mortgage, Am. Compl. Ex. 2.) WaMu was subsequently closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver for WaMu's loans and other assets. (Am. Compl. ¶ 10.) JPMorgan purchased certain assets and liabilities of WaMu from the FDIC as receiver. (*Id.* at ¶ 11.) Plaintiffs' mortgage was among these purchases. (*Id.*)

Ultimately, Plaintiffs defaulted on their loan obligations[1] and JPMorgan initiated foreclosure by advertisement proceedings pursuant to Michigan law. (*Id.* at ¶ 12.) A sheriff's sale was conducted on August 3, 2011. (*Id.*) At the sheriff's sale, Freddie Mac purchased the subject premises for $258,189.43 and received a sheriff's deed. (*Id.*) Plaintiff alleges, and Defendants do not contest, that Freddie Mac never actually disbursed the sum bid by it at the sale.[2] (*Id.* at ¶ 14.)

---

[1] Plaintiffs do not dispute this default.

[2] This process is known as a credit bid, the mechanics of which are further in note 4, *infra*.

On February 2, 2012, one day prior to the expiration of the six-month statutory redemption period, Plaintiffs initiated legal proceedings in the Circuit Court for the County of Genesee by filing a multi-count complaint.[3] Defendants timely removed the matter to this Court on March 13, 2012. Because one of Plaintiffs' causes of action was based upon the Michigan Court of Appeals' decision in *Kim v. JPMorgan Chase Bank*, 295 Mich. App. 200, 813 N.W.2d 778 (2012), and because the Michigan Supreme Court granted leave to appeal, the parties agreed to stay the action until the Michigan Supreme Court issued its decision. After the decision, the parties agreed that Plaintiffs could amend their original Complaint.

Plaintiffs filed their "First Amended Complaint to Quiet Title and for Equitable Relief" on June 10, 2013. The Amended Complaint contains one untitled count challenging Freddie Mac's purchase of the Property via a credit bid and seeks a preliminary injunction enjoining Freddie Mac from evicting Plaintiffs or otherwise selling the Property as well as an Order from this Court declaring the foreclosure void and otherwise requiring Defendants to foreclose by judicial action instead of by advertisement. (Am. Comp. 5.) Presently before the Court is Defendants' Motion to Dismiss filed on June 21, 2013 pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[3] Case No. 12-97571-CH.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) allows the Court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007), the Court must construe the complaint in favor of the plaintiff and determine whether plaintiff's factual allegations present claims plausible on their face. This standard requires a claimant to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Id.* at 557, 127 S. Ct. at 1965. Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

In determining whether a plaintiff has set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949

4

(2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974), courts must accept the factual allegations in the complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. This presumption, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted). In conducting its analysis, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### III.   ANALYSIS

Foreclosures by advertisement, such as the foreclosure at issue in this case, as well as the rights of both the mortgagor and mortgagee after the foreclosure sale has occurred, are governed by Michigan statutory law.  *See, e.g.*, *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 50, 503 N.W.2d 639, 641 (1993); *Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (applying Michigan law) (citation omitted).  Pursuant to Michigan law, a mortgagor has six months from the date of the sheriff's sale to redeem the property.  Mich. Comp. Laws § 600.3240(8).  If the mortgagor fails to redeem before the redemption period expires, the mortgagor's "right, title, and interest in and to the property" are extinguished, *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 4 N.W.2d 514, 517 (1942), and the sheriff's deed "become[s] operative, and [] vest[s] in the grantee named therein . . . all the right, title, and interest [] the mortgagor had[,]" Mich. Comp. Laws § 600.3236.  This rule of law – holding that absolute title vests in the purchaser at the foreclosure sale upon expiration of the redemption period – has been applied consistently by state and federal courts alike to bar former owners from making any claims with respect to the foreclosed property after the statutory redemption period has lapsed.

There is, however, one caveat to the general rule described above.  Once a foreclosure sale has taken place and the redemption period has run, a court may

allow "an equitable extension of the period to redeem" if a plaintiff makes "a clear showing of fraud, or irregularity[.]" *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (1969); *see also Freeman v. Wozniak*, 241 Mich. App. 633, 637, 617 N.W.2d 46, 49 (2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.") (citing *Senters*, 443 Mich. at 55, 503 N.W.2d at 643). Notably, the purported fraud or irregularity must relate to the foreclosure procedure. *Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630, 631 (1935) (holding that only the foreclosure procedure may be challenged after a sale); *Freeman*, 241 Mich. App. at 636-38, 617 N.W.2d at 49 (reversal of sheriff's sale improper without fraud, accident, or mistake in foreclosure procedure). If a plaintiff seeking to set aside the sheriff's sale demonstrates fraud or irregularity in connection with the foreclosure procedure, the result is "a foreclosure that is voidable, not void *ab initio*." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115, 825 N.W.2d 329, 337 (2012). In order "to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply" with Michigan's foreclosure by advertisement statute. *Id.* "To demonstrate such prejudice, [plaintiffs] must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* at 115-16, 825 N.W.2d at 337 (footnote omitted).

7

Although the redemption period has expired in the instant case, Plaintiffs ask the Court to rescind the sheriff's sale. The posture of this case therefore requires that the Court assess whether Plaintiff's Amended Complaint states a claim upon which relief may be granted within the fraud or irregularity framework outlined above.

## A.     The Parties' Arguments

Plaintiffs contend that Freddie Mac's purchase of the Property by way of a credit bid[4] constitutes an irregularity such that this Court may set aside the foreclosure sale. (Pls.' Resp. 1-2.) Specifically, Plaintiffs argue that "[i]n order to have purchased the subject real property at the mortgage foreclosure sale by a credit bid pursuant to [Michigan Compiled Laws §] 600.3228, [Freddie Mac] had to have been either the mortgagee of the subject real property, or its assignee, or its legal representative, on or before the date and time of the mortgage foreclosure sale." (*Id.* at 1.) Thus, Freddie Mac's purchase of the Property via a credit bid "is symptomatic" of Freddie Mac "having been an 'assignee' that was assigned the mortgage after the foreclosure was already begun by [JPMorgan] as the foreclosing

---

[4] The credit bid rule provides that "[w]hen a lender bids at a foreclosure sale, it is not required to pay cash, but rather is permitted to make a credit bid because any cash tendered to would be returned to it." *New Freedom Mortgage Corp. v. Globe Mortgage Corp.*, 281 Mich. App. 63, 68, 761 N.W.2d 832, 836 (2008) (citation omitted). "If this credit bid is equal to the unpaid principal and interest on the mortgage plus the costs of foreclosure, this is known as a 'full credit bid.'" *Id.* (quotation omitted). "When a mortgagee makes a full credit bid, the mortgage debt is satisfied, and the mortgage is extinguished. *Id.* (citation omitted).

party and record holder of the mortgage, and that [Freddie Mac] was therefore required to 'advertise anew' pursuant to the unabrogated holding in *Niles v. Ransford*, 1 Mich. 338 (1849)." (*Id.*)

Defendants counter Plaintiffs' argument by indicating that the credit bid purchase was entirely proper and, that as a nonparty to the transaction, Plaintiffs lack standing to challenge the consideration given by Freddie Mac in connection with the purchase of the Property. (Defs.' Br. 8-9.) Defendants argue that the credit bid purchase does not constitute fraud or irregularity sufficient to set aside the foreclosure sale and that even if Plaintiffs had alleged an actionable fraud or irregularity, that Plaintiffs' failure to allege prejudice mandates dismissal of this action.

## B. Application

Plaintiffs' position that the foreclosure sale is irregular and void by virtue of Freddie Mac's credit bid purchase at the sheriff's sale is unavailing as it ignores the Michigan Supreme Court's recent decision in *Kim*.[5] In *Kim*, the Michigan Supreme Court indicated that an irregularity in the foreclosure procedure challenged after the expiration of the statutory redemption period results in "a foreclosure that is voidable, not void *ab initio*." *Kim*, 493 Mich. at 115, 825

---

[5] Plaintiffs' Amended Complaint and Response are devoid of any reference to *Kim*. The Court finds this absence curious in light of the fact that the parties stayed proceedings until the Michigan Supreme Court issued its decision.

9

N.W.2d at 337. Thus, Freddie Mac's purportedly problematic purchase of the Property by way of a credit bid does not, contrary to Plaintiffs' suggestions, render the foreclosure void as a matter of law. Even assuming that Plaintiffs' contentions regarding the credit bid rule have merit,[6] *Kim* plainly requires plaintiffs seeking to set aside a foreclosure sale to "show that they were prejudiced by defendant's failure to comply" with Michigan's statutory scheme regulating foreclosures by advertisement. *Id.* Prejudice is demonstrated when plaintiffs "show that they would have been in a better position to preserve their interest in the property absent

---

[6] Plaintiffs argue that only a mortgagee, its assigns, or legal representatives may purchase a property by way of a credit bid. (Pls.' Resp. 1-2.) As support for this proposition, Plaintiffs rely on Michigan Compiled Laws § 600.3228, which provides:

> The mortgagee, his assigns, or his or their legal representatives, may, fairly and in good faith, purchase the premises so advertised, or any part thereof, at such sale.

As Defendants point out, this permissive and nonrestrictive statutory provision does not contain any language referencing a credit bid. While Plaintiffs rely on *Niles v. Ransford*, 1 Mich. 338 (1849) for the proposition that an entity receiving an assignment of a mortgage that is in the midst of foreclosure proceedings must reinitiate such proceedings, there is no indication that JPMorgan assigned the Property to Freddie Mac. Rather, Freddie Mac purchased the Property using a credit bid in its capacity as an investor taking over Plaintiffs' defaulted loan. (Defs.' Resp. 8.) As such, Freddie Mac was not required to pay money to itself. *Cf. Freedom Mortgage Corp. v. Globe Mortgage Corp.*, 281 Mich App. 63, 68, 761 N.W.2d 832, 836 (2008) ("When a *lender* bids at a foreclosure sale, it is not required to pay cash, but rather is permitted to make a credit bid because any cash tendered would be returned to it.") (emphasis added). Despite touching upon this argument briefly, the Court need not fully address Plaintiffs' claims regarding the propriety of Freddie Mac's credit bid at the sheriff's sale as Plaintiffs' failure to allege actionable prejudice is dispositive.

defendant's noncompliance with the statute." *Id.* at 115-16, 825 N.W.2d at 337 (footnote omitted).

Plaintiffs have not alleged sufficient factual matter demonstrating prejudice in the instant case. In a wholly conclusory manner the Amended Complaint alleges that the foreclosure sale should be voided so as "to protect the plaintiffs from having to pay the same debt twice." (Am. Compl. ¶ 16.) However, Plaintiffs do not substantiate this allegation of potential double liability by, for example, alleging that a second entity is attempting to collect on the underlying debt. Plaintiffs also allege that they "will suffer irreparable harm and injury in that [they] will be dispossessed of said real property and will lose rights in the property." (*Id.* at ¶ 19.) However, this is not the type of prejudice *Kim* contemplates as this is precisely the result intended by Michigan's foreclosure by advertisement statute. Plaintiffs do not dispute defaulting on their obligations under the Note nor do they allege any effort to redeem the Property. Further, Plaintiffs do not explain how Freddie Mac's credit bid purchase impacted their ability to exercise their right to redeem the Property within the statutorily-prescribed redemption period, if at all. *See Long v. Fed. Home Loan Mortgage Corp.*, No. 297438, 2011 WL 2585984, at *2 (Mich. App. June 30, 2011) (unpublished) (per curiam). Without alleging any such facts, Plaintiffs have not stated a viable claim for the relief they seek.

### IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Plaintiffs' failure to allege any facts showing that Defendants' actions prejudiced them as defined in *Kim* necessarily translates into a failure to state a claim upon which relief can be granted.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE**.

Date: August 15, 2013

                                            s/PATRICK J. DUGGAN
                                            UNITED STATES DISTRICT JUDGE

Copies to:

**Steven A. Finegood, Esq.**
**Kyle R. Dufrane, Esq.**
**Nasseem S. Ramin, Esq.**